MaddeN, Jtodge,
delivered the opinion of the court:
Plaintiff in each of these cases was assigned to duty in the fire department in the defendant’s Navy Yard at Mare Island, California. Each was given a classification, which, except for plaintiff W. J. Nolan, did not indicate his actual duties as a fireman. Each was paid the rate for his classification for an eight-hour day, wfith the usual privileges of sick and annual leave and extra pay for Sunday and holiday work. Defendant seems to claim that plaintiffs were paid time and one-half for Sunday when the usual practice did not call for such payment, but we think that is immaterial, if true. Plaintiffs were normally required to remain at the yard for the full twenty-fours of the day in order to be available for duty as firemen, if a fire or other emergency should occur.
As to eight of these hours beyond the normal eight-hour working day, the practice was not irregular. The order *462 ©f the Secretary of the Navy of December 1, 1920, quoted in No. 12 of the findings of fact, authorized requiring members of the fire fighting force to remain available “for an additional eight hours’ nominal duty, in order to be within call in the event of a fire call, in consideration of being furnished quarters, heat and light, etc.” Plaintiffs were furnished such accommodations, in consideration of their being so available.
Defendant’s requirement that plaintiffs remain at the yard and hold themselves available for the third eight-hour period of the twenty-four was not consistent with the order of the Secretary of the Navy referred to in the preceding paragraph, which order contained the following language:
* * * The eight-hour nominal tour of duty should be arranged so that each employee may have a third eight-hour period off duty.
The practice of requiring availability for twenty-four hours a day continued, however, until March 1, 1925.
An act of Congress, approved May 15, 1937, 50 Stat. 964, quoted in full in No. 2 of the findings of fact herein, provided:
That jurisdiction is hereby conferred upon the Court of Claims of the United States to hear, determine, and render judgment upon the claims of [naming the plaintiffs] for extra labor over and above the sixteen-hour period of duty per day required to be performed at Mare Island Navy Yard, California, which extra labor over said period was not in accordance with the order of the Secretary of the Navy, dated December 1, 1920; * * *
The first question for the court is whether Congress meant that plaintiffs should be paid for actual labor performed within the third eight-hour period, or whether it meant that they should be paid for remaining available by staying on the premises for that period. If it meant the former, there is practically no proof as to how often or for how long plaintiffs were so engaged. We suppose that it was very little, since they would have been called upon during that time only in case of fire or other emergency.
We are persuaded by the language of the Committees on Claims in their respective reports to the Senate and House of Representatives, that the latter was the legislative mean *463 ing. The two reports are identical. (See Senate, 75th Congress, 1st Session, Report No. 440, to accompany H. R. 1315; House of Representatives, 75th Congress, 1st Session, Report No. Ill, to accompany H. R. 1315).
The reports speak of the complaints of the claimants “that they were in fact forced to be on duty and subject to call for the entire 24 hours every day, excluding Sundays”; that “they were required to be on duty, in attendance at the yard and subject to call for all hours of the day and night;” the reports say that “claimants maintain, with proof, that they actually served the %li,-howr period.” [Italics supplied.] The reports further say “The bill is merely jurisdictional, and, we feel, if these claimants were in fact required to serve as they allege, they are entitled to the opportunity of establishing their claims before the Court of Claims.”
There is no word in the committee reports about actual labor performed by plaintiffs during the third eight-hour period. Congress was aware, as we are, that plaintiffs must have, except on occasions of emergency, spent the period in sleep and having breakfast and getting ready to report at eight o’clock in the morning for their regular tour of duty. It is evident that the merit of these claims, in the eyes of Congress, was not that the claimants had actually worked without compensation, but that they had been required to stand by and be on call through the entire twenty-four hours of the day, without compensation. While the words “extra labor” used in the special act are not a completely apt description of what was required of plaintiffs, we have no doubt as to what Congress meant.
We are, then, to determine whether plaintiffs were so required to stand by for emergency calls, and if so, for how many days. We find that they were so required, and for the number of days recited in the findings of fact. They should be compensated at the regular daily rate which they were receiving on those days for their regular duties. We recognize that the proof of the actual number of days of stand-by service required of plaintiffs is not as clear as could be desired. What is shown is that on the days counted, plaintiffs worked their regular daytime tour of *464 duty; that there was no special reason why they would not have been required to stand by at night; that it was customary to require them so to stand by. In those circumstances it is probable that they were required to stand by. No further proof is available. Congress having regarded the defendant as the party in fault, it cannot escape liability because it did not keep records from which clearer proof could be gathered.
Plaintiffs seem to argue that the rate should be one and one-half times the regular rate. We see no basis in the special act for that contention. Whether or not plaintiffs might have been entitled, under the general law and the regulations of the Navy Department, to have been paid time and one-half for the actual time spent in emergency service we do not decide. Such rights, if any, have long since been barred by the statute of limitations, and were not revived by the special act. Besides, no adequate proof of the actual time so spent has been offered.
Judgment will be entered for each of the plaintiffs in the amount specified in each case. It is so ordered.
Jones, Judge; Littleton, Judge; and Whaley, OMef Justice, concur.
Whitaker, Judge, took no part in the decision of this case.